**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                      **Plaintiff,**

           v.                                                       **09-CR-331A**

**MICHAEL HERNANDEZ,**

                      **Defendant.**
_____

## REPORT, RECOMMENDATION AND ORDER

This case, as it relates to defendant Michael Hernandez only, was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #532.

## PRELIMINARY STATEMENT

The defendant, Michael Hernandez ("Hernandez"), along with twenty-eight others, is charged in a multi-count, Fourth Superseding Indictment (Dkt. #408) with alleged narcotics trafficking through a continuing criminal enterprise and firearms offenses. Presently pending is Hernandez's motion to suppress the conversations intercepted pursuant to Title III. Dkt. #555. This Court's Decision and Order with respect to defendant Hernandez's non-dispositive discovery motions was previously filed on November 21, 2012. Dkt. #672. What follows is this Court's Report, Recommendation and Order addressing defendant Hernandez's motion to suppress.

**DISCUSSION AND ANALYSIS**

**Motion to Suppress Wiretap Evidence**

At issue here are the applications for the authorizations to intercept wire and electronic communications relating to two target telephones. More specifically, with respect to cellular telephone 716-507-5258, the initial Order was signed by Chief Judge Skretny authorizing the interception of wire communications on October 9, 2009. Subsequently, additional Orders were signed by Chief Judge Skretny authorizing both the continuation of the interception of wire communications and the interception of electronic communications on November 13, 2009 and December 11, 2009. The October 9, 2009 application and the November 13, 2009 application were each accompanied by a lengthy affidavit from Federal Bureau of Investigation ("FBI") Special Agent John A. Yervelli, Jr. The December 11, 2009 application was accompanied by a lengthy affidavit of FBI Special Agent Jason E. Galle. With respect to the second target telephone, 716-846-9273, Chief Judge Skretny signed the Order authorizing the interception of wire communications on November 25, 2009 and that application was accompanied by a lengthy affidavit of FBI Special Agent Jason E. Galle.

In each of the aforementioned affidavits, Special Agents Yervelli and Galle described in detail a narcotics distribution enterprise principally operated by Javier Navarro, Christopher Santiago, Jose De Leon, Eric De Leon, and others known and unknown, involving, *inter alia*, the financing and distribution of drugs, firearms activities and the use of violence in furtherance of their criminal enterprise activities. The factual

allegations set forth in Special Agents Yervelli's and Galle's affidavits were derived from their personal knowledge based upon their participation in the investigation, including the review of records and documents, such as the Pen register activity related to the target telephones, as well as information provided to them by confidential human sources, and other federal and state law enforcement officers. In their affidavits, Special Agents Yervelli and Galle iterate specific details of drug and firearm activity undertaken by Javier Navarro, Christopher Santiago and others known and unknown to law enforcement.

Defendant Hernandez asserts that the wiretap applications submitted to United States District Judge William M. Skretny failed to satisfy the necessity requirement and that the government failed to make a sufficiently particularized showing that routine investigative techniques would not be effective. Dkt. #555, p.16. In its response, the government asserts that defendant Hernandez lacks standing to challenge Chief Judge Skretny's Orders authorizing the interception of wire and electronic communications because he has not admitted that his voice is heard on the intercepted calls or that the Orders were directed at him. Dkt. #589, pp.49-51. In addition, although not raised by defendant Hernandez, the government addresses the probable cause for the Orders. *Id*. at pp.52-57. Thereafter, the government addresses defendant's primary argument concerning a lack of necessity, relying, in part, on this Court's prior finding in a related case, *United States v. Eric De Leon-Navarro, Sr., et. al.*, 10-CR-188-A, that necessity for these eavesdropping warrants existed. *Id*. at pp.57-62. Lastly, although not raised by defendant Hernandez, the government

addresses minimization, as well as the sealing of the discs containing the intercepted conversations. *Id*. at pp.63-68. This Court will only address those arguments presented by defendant Hernandez and will leave the remaining arguments raised by other defendants to United States Magistrate Judge Hugh B. Scott to whom the other defendants' motions have been referred.

Title 18, United States Code, Section 2518(10)(a) permits any aggrieved person to move to suppress the contents of any intercepted communication on the ground that the communication was unlawfully intercepted; the order approving interception was insufficient on its face; or the interception was not made in conformity with the interception order. An "aggrieved person" is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." Title 18, United States Code, Section 2510(11). This provision "is to be construed in accordance with standing requirements usually applied to suppression claims under the fourth amendment." *United States v. Gallo*, 863 F.2d 185, 192 (2d Cir. 1988), *cert. denied*, 489 U.S. 1083 (1989). Here, defendant Hernandez was not a named target or interceptee on the Title III interception orders docketed as 09-MR-88 and 09-MR-103 and he has failed to demonstrate that he is an aggrieved person sufficient to establish standing to move against the intercept orders. For those reasons alone, defendant Hernandez's motion to suppress the wiretap evidence should be denied.

Notwithstanding the foregoing, the Court will address defendant Hernandez's arguments. Defendant Hernandez argues in conclusory fashion that the necessity for electronic eavesdropping and the interception of electronic communications was not sufficiently established prior to the application for the warrant and further, that it was not established that routine investigative techniques would not be effective. Dkt. #555, p.16. Specifically, the defendant's "motion" in its entirety states:

> 54) Section 2518(1)(c) of Title 18 of the United States Code requires that an application for a wiretap order provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."
>
> 55) Defendant HERNANDEZ submits that the Government has failed to meet this necessity requirement, offering merely boilerplate language linking HERNANDEZ to the alleged conspiracy.
>
> 56) Further, HERNANDEZ alleges that [sic] government has failed to make a sufficiently particularized showing that routine investigative techniques would not be effective in penetrating HERNANDEZ's role in the conspiracy.

Dkt. #555, p.16.

In their affidavits, Special Agents Yervelli and Galle enumerated multiple reasons why they believed that normal investigative procedures have been tried and have failed, reasonably appear unlikely to succeed if continued or tried or are too dangerous to employ in this investigation. Notwithstanding the foregoing, Special Agents Yervelli and Galle acknowledge in their affidavits that some traditional

investigative techniques, such as court-authorized pen registers, physical surveillance, telephone toll records, interviews, public records and information from confidential sources, have been probative as to the existence of an ongoing illegal narcotics and firearms business.  However, Special Agents Yervelli and Galle explained that the investigation had not yielded sufficient evidence or ascertained the identities of all participants and co-conspirators in the illegal conspiracy, as well as identified the sources of supply of the powder cocaine and firearms.  In their affidavits, Special Agents Yervelli and Galle  set forth in detail each investigative technique used, what information was revealed and what information was still desired and unable to be ascertained through those investigative techniques.  In addition to the foregoing investigative techniques employed during the investigation, Special Agents Yervelli and Galle further explained that the following additional investigative techniques had been considered, but deemed not likely to succeed at the time: introduction of under cover law enforcement personnel, interviews of subjects, search warrants, trash pulls and convening a Federal Grand Jury.  Special Agents Yervelli and Galle further iterated that although the investigation generated substantial evidence against certain individuals, the full scope of the members of the drug and firearms networks have not been fully identified, nor had the extensive nature of the distribution cell, the method of drug supply, the sources of supply in Puerto Rico and Buffalo, the means of financing the purchase of drugs, the locations where the drugs and proceeds are stored (stash houses) and the method of disposing of the drug proceeds been ascertained.

Each of the applications at issue herein was based on affidavits ranging in length from eighty-six (86) to one hundred twenty-six (126) typewritten pages wherein Special Agents Yervelli and Galle described in great detail the history of the investigation to date and information obtained based on use of the above-described investigative techniques, as well as the reasoning behind the decision not to pursue certain investigative techniques. In addition, the training and experience of the agent can be considered in the context of "necessity." *United States v. Fama,* 758 F.2d 834, 838 (2d Cir. 1985).

As a threshold matter, the Court notes that Title 18, United States Code, Section 2518(1)(c) requires that an application for electronic surveillance must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied,* 498 U.S. 906 (1990), addresses the issue raised by the defendant on whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

> Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."

The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987. Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).

We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554

F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). And, as the *Scibelli* court went on to say:

[I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".

> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the showing be tested in a practical and commonsense fashion.

S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. 2190.

*Scibelli*, 549 F.2d at 226 (citations omitted).

*Torres*, 901 F.2d at 231-232) (brackets included); *see also Diaz*, 176 F.2d at 111.

As in *Torres*, the defendant's suggestion that traditional law enforcement methods had proven successful and could continue to advance the investigation, thereby negating the need for interception of electronic communications, is unpersuasive. Giving proper deference to Chief Judge Skretny's review and acceptance of the extensive affidavits of Special Agent John A. Yervelli, Jr. and Special Agent Jason E. Galle in support of the applications for the intercept orders and continuation thereof, it is once again concluded that Chief Judge Skretny properly found that conventional investigative techniques had been tried and failed and that alternatives to wire interception would be unlikely to succeed or would be too dangerous, thereby necessitating the intercept orders and extensions thereto. Accordingly, it is recommended that this aspect of defendant's motion to suppress be denied.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1), that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute,

Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:    Buffalo, New York
              November 27, 2012

                                      *s/ H. Kenneth Schroeder, Jr.*
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**